Good morning. May it please the Court. My name is Matthew Siegel. For this case today, I'm a Special Deputy Prosecuting Attorney for King County, Washington, representing I'm sorry. Go ahead. I interrupted you. Go ahead. Yes. Thank you, Your Honor. I'm an attorney in private practice for Pacifica Law Group, but deputized for this matter. I represent retired Senior Deputy Prosecutor for King County, Mr. Jeffrey Baird. With me at council table is Senior Deputy Prosecutor Carla Carlston from King County, along with my co-counsel for the City of Redmond, Mr. Robert Christie, and Mr. John Berry. I intend to focus my portion of the argument today on answering the Court's three questions that were posed in this order, and Mr. Christie will focus on probable cause, all of that, of course, subject to the Court's inquiries, whatever you have. And what I have interrupted to clarify, because you're splitting time, is there going to be time reserved for rebuttal and who's doing it? Yes, Your Honor. There is, as shared with the lower bench, six minutes for my opening, five minutes for Mr. Christie, and then two and two reserved for rebuttal, although I understand that's my responsibility to track that time. All right. Go ahead. So this case traces its origin to a brutal murder of a young woman, Arpana Janaga, nearly 20 years ago now, in her apartment in Redmond, Washington. And after an extensive investigation, the respondent, Mr. Fair, was charged with that murder, and he was tried two times. The first time there was a hung jury, the second time he was acquitted. And after the acquittal, Mr. Fair has brought civil claims against Baird, Detective various theories of malicious prosecution, as well as judicial deception. Importantly, every claim against Baird and Coates depends on a showing that there was insufficient probable cause to charge Mr. Fair. On that and other grounds, briefed to this Court, appellants sought summary judgment and qualified immunity. Below, that was denied, leading to this appeal. On each of these grounds, we ask you to reverse. Did you also seek absolute immunity for the prosecutor below, and it was denied? Am I correct about that? We did seek it. I believe it was granted, at least in part, Your Honor. I'd have to look at the summary judgment ruling, but the issue of absolute immunity is not part of this appeal. Okay. But just over a month ago, this Court granted appellants motion for a stay, ruling that appellants had made a strong showing they are likely entitled to qualified immunity based on the existence of probable cause. And if I can borrow from Christopher Marlowe, that was the order that launched 1,000 ships. Right. And that leads us to where we're at today. Absolutely. The language of the stay was broad, and we issued it because trial was around the corner, and so we wanted the issues on appeal resolved so that it could perhaps obviate that trial. Now, since then, though, there's been a representation or a desire to dismiss all the claims against both defendants. So doesn't that leave us in a different posture? It does leave us in a slightly different posture, Your Honor. First of all, we join in your desire to have this appeal resolved. There is critical importance to having this appeal resolved for reasons that I will elaborate. But if I may simply take the Court's questions in order, and I believe this is the first one. First, you've asked, and really this is directed to my friend, whether they will seek to dismiss all claims against Barrett and Coates. There is some ambiguity about that because the original emergency motion said only the 1983 claims. So the reply now seems to suggest that they are dismissing all claims against Barrett and Coates, but we look forward to hearing confirmation of that. It's possible that position has changed during the course of the motion briefing. Now, as to the second part of the Court's first question, though, if they intend to dismiss with any conditions, we would certainly be arguing for a significant condition, and that is that, as a matter of law, the dismissal, if it's with prejudice, as they suggest it will be, would be on the merits, would be an adjudication on the merits per Semtec v. Lockheed Martin from the U.S. Supreme Court. I mean, isn't that basically what a dismissal with prejudice is? Well, I tend to agree with you, but I think there is some attempt to avoid that, as you are going to likely hear in the remainder of this argument. And partly the reason to avoid that is, for example, the Mon-El claim, which exists against the county and the city, which is effectively an attempt to try the same case vicariously through the real parties in interest. And so I believe that there is an effort to circumvent that and to basically proceed on the merits of these same arguments. And that is one of the reasons why we would submit that there is no merits. That's against the county, though. Right? If it's a total and complete dismissal as the Barrington Codes, does that moot the  It does not moot the appeal. I mean, and that's really now we're on to the second question, I think, Your Honor, if I may. We would say no. It does not moot the appeal for multiple reasons. First of all, as we are here today, the claims are live. This is an aspiration that the other side has said that they wish to dismiss. It's not a dismissal as of right. We know that. We know the dismissal will be contested. It's been acknowledged. It's in the emergency motion that if we can show prejudice I'm sorry. The dismissal will be contested in what way? Because that would be you, right? It would be us. That's correct. And so contested how? It will be contested on the grounds that unless this is a complete adjudication of the merits, including probable cause, that we will suffer legal prejudice. And that is a reason for the dismissal to be denied. So I have a little bit of trouble relating that, even assume for the moment that what you said is true, relating that to the reason we're here on this interlocutory appeal. This is, of course, an interlocutory appeal, and the reason we have these interlocutory appeals on qualified immunity is so that those who are immune do not have to suffer. The individuals who are immune do not have to suffer a trial if they are immune from suit. And if they are totally out, then why would there be a reason for the interlocutory appeal to proceed as opposed to your being able to argue whatever you want in a subsequent appeal if you lose? Your Honor, first of all, they will suffer essentially the same trial, because Well, not the two defendants, right? They will, because they will be witnesses, necessary witnesses, and they're not the ones who are on the hook for the damages as we stand here today. The entities are. They're the real parties of the interest. But the courts don't really care about that issue in terms of we don't look to who  We say that the people who are sued, the officers, or in this case the DPA who are sued, have the right to avoid the trial, and that that is a personal right. That's true, but in order to get to that point, they first have to get a dismissal, and I call your court, the court's attorney Well, we'll hear from opposing counsel in a minute, but assuming that they get a complete and total dismissal with prejudice, which is what's been represented, I think what you're trying to say is, well, we'll still suffer some legal prejudice, but that's the county. The county in the Monell claims, assuming that they go forward to trial, may cover the same ground, and so, therefore, we don't want We think that the dismissal still leaves the county on the hook, but Well, we think the dismissal might be denied. That's not the subject of our appeal right now, right? Am I missing something? No, Your Honor. I think the dismissal might be subject to denial on the grounds that it would be essentially equating to a dismissal without prejudice, and I call the court's attention to a couple of authorities. We hadn't had a chance to bring these up previously, and I see I'm almost out of time. No, that's okay. This is important, so I want to make sure that the questions are answered, and I'll give you your two-minute back. Thank you, Your Honor. County of Santa Fe v. Public Service Company of New Mexico, which is a Tenth Circuit case, 311F3-1031, is part of a line of authority that says that even on a voluntary dismissal with prejudice, which was under 41A2, a court considering that must look at prejudice to other parties as part of the legal prejudice inquiry. And there are cases within the Ninth Circuit that have followed this line of authority, including Columbia Casualty Company v. Gordon Trucking, which is from the Northern District of California. And so what's going to happen here, if this matter is remanded before a decision, is that they presumably will make this motion, if that's what they say they're going to do. We would oppose it on the basis that it would be prejudicial, the legal prejudice standard, and we don't know what Judge Chun is going to do. I think what you've said, factually, is certainly a possibility. So why wouldn't we, assuming your friend, when she gets up, says, yes, we propose to file a motion to dismiss the two individuals, all claims against them with prejudice, why wouldn't we do a limited remand, not dismiss the appeal, essentially limited remand, hold it in abeyance, see what the district court does, and if the district court doesn't do the dismissal and the two individuals are still in the case or it isn't with prejudice, and if that's the representation, then we can take up the appeal if we need to or not. But if the dismissal is all claims against the individuals who might or might not have qualified immunity and they're no longer in the case, then at that point decide whether the appeal is moot. What would be the prejudice to you from a limited remand to see what happens? I believe the prejudice to us would be a delay and an uncertainty versus no prejudice for the court to render a decision on a case that is fully briefed and about to be in theory in the future, but it actually would not be rendered moot because the court would have then decided. And then the district court can, with the benefit of the decision by this Court, decide what comes next. We don't have to come back. Not that we are averse to coming back, of course, but that does seem to be the most efficient issue. We've had the plaintiff saying that Mr. Ferris ---- I think we've got your argument. I think if I understand your argument also that you want to have Mr. Barrett and Mr. Coates oppose this motion so that you can derive a benefit for the other defendants who remain in the case. Did I hear you correctly say that? I think the question is whether there's going to be an argument about if this is a dismissal that acts as an adjudication on the merits. If there's going to be an argument about that, it would be highly prejudicial for a voluntary dismissal to occur under these circumstances. And in that circumstance, there's even case law that says you could potentially refile the claims in another court, even if you dismiss with prejudice in Federal Court. Again, that's the Lockheed Martin case. So our concern is prejudice to all parties in the case, including Barrett and Coates, but also the county and the city. Thank you very much, Your Honor. We'll put two minutes back on the clock for rebuttal. Thank you. Good morning. May it please the Court, my name is Bob Christie. I'm here on behalf of now Deputy Chief Brian Coates, also the city of Redmond. If I may just follow up with one comment with respect to my colleague's argument. If the plaintiff's, if this matter is not resolved on a merit-based decision at this point, it will be the plaintiff's assertion below that our individual clients violated Mr. Barrett or Mr. Fair's constitutional rights. They will be subject to that assertion at trial in the context of Monell claim, and they will be required to sit through that trial and defend their conduct in the identical fashion in which it is currently being asserted. Well, not identical because they wouldn't be a party. They might be a witness. They might even be subject to the rule, but they wouldn't be a party. Agreed, Your Honor. But it will be, that's why we're asking this, and it really goes to the court's questions, is the dismissal with prejudice an adjudication on the merits? If it is an adjudication on the merits with respect to the only two constitutional actors, then that's quite different. If there is some hedge on that, and I guess we'll hear from counsel what the qualifications are on that, it would change things. But let me turn, if I may, to probable cause to the extent that the court is interested in hearing argument on that because it is at the heart of the merits of the appeal. On December 4th, this court issued an order that stated defendant appellants, that would be Mr. Baird and Deputy Chief Coates, have made a strong showing that they are likely entitled to qualified immunity based on the existence of probable cause. And so what we are asking here today is that the court make such a ruling on a merits opinion finding precisely that as a matter of law because qualified immunity based on the existence of probable cause is a prong one determination and we submit this, that any other outcome today, and respecting the court's notion of a limited remand, given the effort, the time, the energy that has been placed into bringing the issues to the court today, any other outcome we submit would erroneously allow these claims to proceed and would irreparably harm Coates and Baird who will forever lose their right to avoid a trial. And there are significant additional pretrial and trial tasks ahead of them. Well, but they never have a right. They never have any type of right to avoid being a witness in a trial unless it's something personal to them that medical or something else, they have to do a deposition because my client can't come to the court. But basically there's no, there's no concomitant right to qualified immunity, not to be a witness. Right? That is correct. I think what you're asking the court to do is to issue an advisory opinion on probable cause when there's really no controversy. If in fact the plaintiff is going to dismiss with prejudice, all claims, all claims against your clients. We are not asking the court to issue an advisory opinion. And of course now we are here in the context and, and that's why it's probably best that time is reserved and we see what argument is actually made by my friend. Because as we know from their emergency motion, it was a reference only to dismissing the section 1983 claims. That's unequivocal. And it is in the reply that creates, I'm sorry, Your Honor. Their positions shifted somewhat. So, you know, purpose of argument today, we're definitely going to seek clarification on the scope of what the anticipated dismissal is. So you're free to reserve the rest of your time for rebuttal if you think that's more efficient. I'm going to do that, Your Honor. I think that's good. I'll take the hint. Thank you. Good morning, Your Honors. May it please the court. My name is Corinne Sebrin and I am counsel for Plaintiff Appellee Emanuel Fair. Plaintiff Appellee Fair seeks an unconditional dismissal with prejudice of all claims against defendant appellants. In other words, we seek to dismiss these parties. So let me ask you a question. And your first statement was very clear. So let's say, hypothetically, I have no reason to believe that the district court would do this. But let's say, hypothetically, the district, let's say one of the objections was we want our fees. And the district court were to say on remand, I'm going to allow you to dismiss with prejudice, but only if you pay their reasonable attorney's fees. What would your response be? What would our response be if the defendants? No, I understand what your response would be to the defendant's request for I'm going to dismiss it with prejudice conditioned on your paying their fees. I think that that is something that we haven't considered. However, we're not asking for that condition to be included in the dismissal. I understand that. Certainly the district court would be within their discretion to do that, I think, depending on if certain fee statutes applied or, and we would address it at that time. But we're not asking for a condition that restricts that in any way or I guess would create an issue where we think that mootness wouldn't be. So basically, you're asking to let this motion go forward. The district court may or may not decide to grant it, may or may not decide to grant it with additional conditions. And if the district court were going to impose conditions, you and your client would have to evaluate whether they were agreeable to you or not or whether you just wanted to proceed. Well, Your Honor, I think I want to clarify one thing about this potential pending motion to dismiss, which is that under 28 U.S.C. Section 2106, when a case becomes moot, this court has the authority to do a number of things, including to moot the case and have a limited remand and send it back to the district court with specific instructions. So those specific instructions can include dismissal with prejudice, without costs and fees, and so on and so forth. So this court can actually send the district court specific instructions, and there is no current pending motion to dismiss. I want to clarify that point. The district court sua sponte struck our motion to dismiss when this court ---- Right. If we were to do a limited remand, then you would revive the motion to dismiss, right? We would actually ---- Either refile it or have the court revive the original motion to dismiss? It wouldn't be our original motion, Your Honor, because what we have done here is clarify that we seek to dismiss the parties rather than any individual parties.  So it would be a new motion to dismiss, and is that new motion to dismiss with any conditions? So, for example, we want to voluntary dismiss but not pay attorney's fees or not be subject to attorney's fees? No, Your Honor. There are no conditions. Just a straight out, we want to dismiss whatever conditions the district court wants to impose. It's free to do so. That is correct, Your Honor. So then what would be left? It would be the Monell claims. There are claims essentially relating to King County correctional facilities, conditions and all that. That's not what we're talking about. But with respect to the Monell claims, failure to claim, you want those to go forward against the county? Those are still live against the county. That isn't what we have done here with this motion to dismiss against these particular defendant appellants because these defendant appellants are the parties here. Right, and so those Monell claims until they're trained would also reach the determinations of probable cause, right? Under some theories, yes. Well, sure. You didn't investigate properly. Exactly. That's the whole thing. Whatever you argue against Barrett and Coates, you're going to be bringing against the county through the Monell claims, right? For the failure to train claims, yes. Right. And so what I hear your opposing counsel say is that, well, this panel needs to consider not only that the parties are out, but needs to consider the potential legal consequences of prejudice to other parties, i.e., the county in this instance. What's your response to that? My response is that Article 3 isn't concerned with what other parties are going to be, the claims against other parties. Article 3 requires a specific live controversy against an individual defendant. It needs to be specific. It doesn't really matter that collateral relevance may be had elsewhere or there may be downstream collateral effects. The parties before the court are what the Article 3 controversy is concerned with, and the remaining claims against these municipal defendants is not part of the inquiry, and that's been determined by the Supreme Court. That's been determined by the Supreme Court in Camreta v. Green, and Lewis v. Connell Bank Corp. also stands for that proposition that potential prejudice or downstream effects to other collateral parties is simply not relevant to the controversy. I take it you and your client, and again this is hypothetical, would have no objection to our not dismissing the appeal, to our doing a limited remand for the purpose of allowing you to file this motion to dismiss all claims against the two individuals with prejudice and see what happens, see what the district court does, and then decide where we go from there? We would have no objection to that, Your Honor. As Your Honor pointed out earlier, federal qualified immunity, which is what is at issue here, is a defense that protects individual state actors from liability. It isn't a blanket personal privilege that lets an official avoid testifying in a case against a defendant. Defendant appellants are trying to turn this limited interlocutory federal qualified immunity appeal into a vehicle to dispose of or delay trial on all claims. Well, I do think maybe that's something they said today as a policy, but to be fair to the defendants, your decision to go this route only came after our stay order. That is correct, Your Honor. The court's stay order, and I want to be completely transparent with the court on our reasoning here, the court's stay order fundamentally changed the posture of this case, completely changed the posture of this case on our part. It required immediate, difficult decisions. With trial less than two months away and preparation well underway, the stay made clear that this court's appellate decision certainly might not issue before trial and that a full district court stay over the remaining claims was inevitable. Is there still a trial date? No, Your Honor, there is not. Okay. So if we were to do this, again, hypothetically, and we were, again, hypothetically, I don't even know on a limited remand how the mandate works, but let's say we were to make our order however we were to do it effective immediately, how quickly could you file a motion? A motion to dismiss the remaining claims? A motion to dismiss with prejudice against the two individuals that we're talking about. Immediately, Your Honor. Now the stay's order fundamentally changed the posture of this case for us also because the court did signal it might be focusing on the first prong of qualified immunity and specifically the element of probable cause. This was frankly unexpected for us given the sheer amount of disputed facts that are present related to that issue and the district court's certification of a frivolous appeal. Now what that signal translated to us is that we understood that regardless of the outcome of this appeal, protracted en banc proceedings were likely, which would delay the case indefinitely. Given the court's preliminary signaling on the issue of probable cause and these defendants' history of pursuing every available delay, and I want to be clear, it is their right, that is a strategic decision they're entitled to make just as plaintiff is allowed to make strategic decisions with their own complaints, as we are in this case. Now we know that anything, and they've indicated this here today, anything in short of a ruling in their favor on probable cause after such a signal would prompt them to pursue en banc review. Likewise, on our end, en banc proceedings would be prompted if this court failed to acknowledge the many issues of genuine fact that exist with respect to the issue of probable cause. We would view such a ruling as running counter to the long-established precedent that denials of qualified immunity on the grounds that a genuine issue of material fact exists are not immediately appealable. And this, of course, comes from Johnson v. Jones 515 U.S. 304 and plenty of Ninth Circuit court, circuit briefing, which we have briefed. Now my client cannot afford to wait by granting the individual defendants complete relief now through a dismissal with prejudice, though it is admittedly a bitter pill for us to swallow because we believe in the merits of our case. The case can return to the district court. Trial can immediately be rescheduled on the remaining claims for the first available date. And the substantial trial preparation we have already undertaken can be preserved. Now as the Supreme Court articulated in Web Services, Reproductive Health Services, plaintiffs are masters of their complaint. I'm not sure I understand, going back to your argument, and I don't want to leave it unchallenged because I may be missing something that you can clarify for me, but I take it that your argument is that the presence of conflicting facts somehow means that we can't reach the determination of probable cause. That's not a difficult endeavor for experienced jurors to make a determination as to whether there's probable cause or not. So I'm not sure I understand that argument. Yeah, well, under Johnson v. Jones, George v. Morris, Foster v. Indio, Maropolis v. County of Los Angeles, and more, where there are genuine issues, disputes of fact on an interlocutory... No, I'm sorry, but I think you need to insert the word material. Material, yes. Correct, Your Honor. Where there are genuine issues of material fact... Right, no, I understand that, but an evaluation of probable cause, for example, can take the undisputed facts and make a determination as to whether there's sufficient probable cause there and to see whether any conflicting evidence that you have may directly undermine the determination of probable cause. So the mere existence of conflicting facts doesn't preclude the court's ability to make a determination as to whether there's probable cause, right? Do you agree with that? I agree that courts can make a legal determination of probable cause where the facts are undisputed. And here, for example, there is no dispute that your client's DNA was found in multiple places at the murder scene, or let me take that back, DNA that is likely your client's was found in multiple places at the murder scene. That is undisputed, Your Honor. And it's undisputed that in various statements by your clients to the officers, your client gave changing stories about where he was at the time of the murder, whether he was in bed with someone, whether or not his phone was sort of on its own calling people. Well, Your Honor, there are disputes of fact related to those issues. And I want to point out— But there are no disputes of fact that your client's version of events significantly changed during the interviews because we have the transcripts, right? And you're not claiming the transcripts are inaccurate, right? I'm not claiming that the transcripts are inaccurate, no, but I am claiming that—well, what I would suggest is that there are disputes of material facts related to the veracity of his statements and what was credited versus what wasn't. And what I want to point the Court to, specifically to the probable cause certificate, and I want to apologize in our reply brief, this is cited incorrectly. It's at 13 Baird ER 3490, and we cited it as, I believe, 14 in our briefing, so I wanted to correct that record. But the probable cause certification, starting on page 3 of it, and bait stamp ending 3492, refers to one killer. In Janaga's apartment, it was obvious to investigators that the killer had worked hard to destroy evidence that might link him to the crime. Again, on page 7 of the probable cause certificate, page ending in 3496, quote, the killer's diligent efforts to destroy any biological evidence linking him to Janaga's death with bleach, fire, soap, toilet bowl cleaner, and motor oil, end quote. So here what we have are the probable cause certification itself stating there is one killer who undertook significant efforts to clean up his own crime with cleaning agents and motor oil. Now, on the last page of the probable cause certification, where it begins to discuss the DNA evidence, and again, this is bait stamp ending in 3497, there are three items of DNA evidence that have my client's, that they associate with my client's DNA, a bathrobe, a piece of duct tape, and a swab from her neck. The tissue also, right? No, Your Honor. The tissue is not in the probable cause certification. Okay. But there was DNA, the bedroom floor tissue, right? Yes, Your Honor, and there are disputes of material fact over that, and in fact Appellant Coates' own briefing acknowledges that there was reasonable explanation for that because my client had been punched in the nose during a play fight during the party that night. Well, whether there was a reasonable explanation or not, there's no real dispute that it was your client's, right? No, there's not, but Your Honor, it's also not in the probable cause certification, and so it's irrelevant to the judicial deception claim that we have here. But it's not necessarily irrelevant to whether the individuals had probable cause, right? In the whole scope of things, if we're looking at that, no, it's not. However, probable cause cannot be based on material omissions and false statements in a probable cause affidavit, and so we look to the four corners of the probable cause affidavit when we're making that determination. And I want to point out one very material false misrepresentation that we have alleged and certainly is in dispute here, which is on the last page of the certification. It says, quote, DNA profiles from other tenants and from Janaga's boyfriend were found in her apartment and on evidence taken from her apartment. However, DNA profiles consistent with the defendant and manual affairs link him to the murder. Now, a reasonable inference that can be made from this language is certainly that only a manual affair. My client's DNA was linked to the murder. Defendants, of course, dispute this. However, if you remove the exclusivity language from this probable cause certification and you include the other DNA of several other men that were found on items just as closely linked to the murder, including the bottle of motor oil, including the same duct tape that they linked my client's DNA to, ultimately what you have at the end of the day, Your Honors, is multiple men that were either at a party or had association with the victim that had DNA on many items, including the victim's body. Three of those items of evidence did belong to my client. He was at a Halloween party at the victim's house. It's a one-bedroom apartment. There were 40 to 50 people there. It's not that surprising. However, when you include that there are multiple, multiple men's DNA on items just as closely linked and you remove that exclusivity piece from the probable cause certificate, what a magistrate or any reader is left with is, okay, maybe DNA can't tell us everything about who committed this crime. And particularly when you're looking at the affidavit. If you can start to wrap up, counsel, we're well over time. Oh, I'll just finish that thought. Certainly when you have that, a magistrate would look at what else do we have. And when you include the missing information about Cameron Johnson, his proximity to her, he's her neighbor, he fled to Canada the day of the murder, et cetera, we don't think that a magistrate would have a substantial basis to find probable cause. Thank you, Your Honor. Thank you, counsel. Forty to 50 people at the Halloween party did not have DNA consistent by a probability of one in 3.4 million with a piece of duct tape that had the hair fibers and underwear fibers from Ms. Janaga. I believe Judge Bennett correctly compiled all the very strong evidence demonstrating probable cause as a matter of law. In the city of Indio case, which Judge Nguyen you sat on, the court emphasized, of course, it can decide legal issues and that can include deciding whether the evidence as undisputed gives rise to a violation or not. That is the crux of this appeal. Counsel has said, well, Article 3 doesn't care if there's a collateral consequence. That may be literally true, but that is putting the cart before the horse. The district court would have to decide first whether or not there is legal prejudice. And there it does care. That's the authority that I cited previously. And there they must consider collateral consequences. The Camerata case is completely distinguishable. That talks about a claim that was dismissed already within the appeal period. But you can take these issues up with the district court. That's true. If we were to lift our stay for the district court to make a ruling. Counsel's representative can file that motion forthwith, and then you raise whatever arguments you have below. We could do that, Your Honor. I do take note that there's been a lot of argument about delay. That seems to be a longer course to a resolution than the one we have in front of us. Of course, it's not for me to tell the court how to exercise its discretion on this matter. But it does seem like if the objective is to get to a resolution of the case as promptly as possible, that a decision on this legal issue would be the way of doing that in a most streamlined fashion. Unless the court has any other questions for me, I will cede the remainder. Thank you. You're actually out of time, but I think he's got plenty left. Thank you, Your Honor. I just want to briefly respond to my friend's comments with respect to the description of evidence concerning DNA and the three pieces of DNA that are intimately linked to the murder scene itself, to the body of the victim, and to Mr. Fair. There were three pieces of duct tape that were tested, and this is critical because it's been candidly misrepresented in the briefing that's been submitted. One piece had the fibers in it, and that was clearly a gag piece. That has been determined to the exclusion of one in 3.4 million people to only have the DNA profile of Mr. Fair. Mr. Johnson was specifically excluded from that sample. There's a second sample that is from the roll of the tape, and with respect to that, the determination on the side of the roll was there was no meaningful comparison. There was a third piece of tape which was a length of tape, and that was tested, and the determination there was that neither Mr. Fair nor Mr. Johnson could be excluded. The reason I point this out is because even in the reply brief filed in conjunction with the emergency motion, the statement by counsel is that Mr. Cameron's DNA was present on the same roll. That is factually inaccurate, and it's presented in the context, as we've seen here, trying to create issues of fact concerning the way in which this officer, Mr. Coates, accurately described the DNA profiles linked specifically and exclusively to Emanuel Fair. Another one that is significant is the swab taken from her neck during the autopsy. That identified Mr. Fair to the exclusion of everyone, specifically excluding Mr. Johnson. So those are critical facts that I point out to the court, and I certainly am not going to take issue with the way, Judge Nguyen, the way you described the determination of probable cause. It is a totality of the circumstances test, and this court follows the but-for test. So you can take anything that they have identified, and the question then is, but for that piece of evidence, is there a lack of probable cause, and the answer is clearly no. One question that was asked of my friend that I don't think was fully answered, and that is, what claims remain if this dismissal occurs with respect to the individuals? The causes of action against the individuals are the Section 1983 claims and also the state law malicious prosecution claims. Those claims have been asserted against all defendants, including the governmental entity defendants. So the identical facts that form the basis for the Section 1983 claim against the individuals and against the individuals under state law for malicious prosecution are the identical facts that serve as the factual basis for the Minnell claim and for the claim against them under state law under malicious prosecution. So there is no separation between the facts that would be put forward in a trial on the merits of these remaining claims. However, a dismissal on the merits, a dismissal with prejudice, is a determination on the merits. I think this court, given the judicial resources that have brought us here today, we submit that now is the time for this court to make its determination on the merits of whether or not these officers are entitled to qualified immunity. Under prong one, a determination of probable cause is a complete defense to any theory of liability under 1983, and let that stand in the record as the determination. It is not advisory, Your Honor, respectfully. It is a determination on the issues that have been properly framed and presented here. Thank you very much. All right. Thank you very much to both sides for your very helpful arguments this morning. The matter is submitted, and that concludes this morning's argument calendar. We'll be in recess until 9 a.m. tomorrow. All rise.
judges: NGUYEN, BENNETT, Matsumoto